Pence *et al. v.* Armstrong *et al.*

Filed April 26, 1884.

---

No. 9628.

Pence et al. *v.* Armstrong et al.

Mortgage.—*Description of Real Estate.*—A description of real estate in a mortgage, that may be rendered certain by averment, is not void for uncertainty.

Same.—In describing a parcel of land as being north of the "ground of the C. C. C. & I. R. R." the use of the word "ground," instead of the "right of way," does not render such description void.

Same.—*Replevin Bail.—Subrogation.*—A replevin bail upon a judgment recovered upon a note secured by a mortgage, when compelled to pay the judgment, is entitled to be subrogated to all of the rights of the mortgagee under the mortgage.

Same.—*Foreclosure.*—Such bail is not compelled to exhaust the property of the judgment debtor by execution before he can foreclose such mortgage.

Pence *et al. v.* Armstrong *et al.*

SAME.—*Mistake in Description.—Reformation as Against Subsequent Bona Fide Purchaser.*—A mortgage which fails to describe the land intended to be mortgaged can not be reformed and foreclosed against a subsequent *bona fide* purchaser, but may be against a subsequent purchaser with notice of the mistake.

SAME.—*Notice.*—A mortgage which contains a defective description may be reformed and foreclosed against a subsequent purchaser for value, without actual notice, as the description may be rendered certain by averments, and such descriptions are not void, but are sufficient to put all purchasers upon inquiry and thus to charge them with notice.

SAME.—The fact that the mortgagor, at the rendition of the judgment, owned a large amount of other real estate upon which it became a lien, does not preclude such bail from foreclosing the mortgage, nor does the fact that a third party, to whom a portion of such land was conveyed, agreed to pay the judgment prevent the foreclosure of such mortgage, as these remedies are merely cumulative, and neither is dependent upon the enforcement of the other.

REDEMPTION.—Where the holder of a certificate of purchase receives the redemption money, the redemption is complete whether the person paying the money was legally entitled to redeem or not.

SAME.—*Purchaser of Certificate of Sale After Redemption.*—A purchaser of a certificate of sale after redemption can acquire no title through such certificate, though he had no notice of such redemption at the time of such purchase.

SAME.—*Purchase for Benefit of Owner.*—Where the owner of the equity of redemption places means in the hands of another with which to redeem such property, and such other person thereafter purchases such certificate and transfers it to another, such purchase operates as a redemption of such property, and the last purchaser can not claim title through such certificate, though he had no notice of such redemption at the time his purchase was made.

SUBROGATION.—*Assignee of Judgment on Note Secured by Mortgage.—Replevin Bail.*—The assignee of a judgment, recovered upon a note secured by a mortgage, acquires by his purchase the mortgage, and bail upon the judgment upon payment is subrogated to all the rights of the assignee under said mortgage.

SAME.—Where A. holds two mortgages upon the same land, and the note secured by the senior mortgage is put into judgment, the judgment transferred, replevin bail entered and the judgment afterwards paid by the bail, such bail is entitled to be subrogated to all the rights of the assignee of such judgment against all persons claiming through the mortgagee under the junior mortgage.

From the Henry Circuit Court.

*M. E. Forkner, J. W. Sansberry, M. A. Chipman* and *W. R. Pierse,* for appellants.

*J. H. Mellett, E. H. Bundy, C. L. Henry* and *H. C. Ryan,* for appellees.

BEST, C.—This action was brought by Nathan Armstrong against Samuel Pence, James VanWinkle, Elijah J. Walden and others, to reform and foreclose a mortgage.

The action was commenced in the Madison Circuit Court and the venue changed to the Henry Circuit Court. After the venue was changed an amended complaint was filed.

The amended complaint averred, in substance, that Alfred Walker, on the 23d day of March, 1874, executed to James M. Dickson a mortgage upon the following real estate in Madison county, Indiana, viz.: Commencing at a point on the east side of Main street, in the city of Anderson, 208 feet south of the southwest corner of lot number seven (7), in Williams's second addition to said city, running thence south with the east line of Main street, in said city, to the Cleveland, Columbus, Cincinnati and Indianapolis railroad; thence east by south with said railroad to the first alley; thence north to a point directly east of the starting point, and thence west to the place of beginning, to secure a note of $1,280, executed at the same time, payable on the 6th day of February, 1876, with interest and with attorney fees, which mortgage was duly recorded in the recorder's office of said county on said day; that said real estate was thus described in said mortgage: "Commencing at the southwest corner of a lot formerly owned by B. F. Jackson, in the southeast square of the city of Anderson, running thence south with the east line of Main street, in said city, to the ground of the Cleveland, Columbus, Cincinnati and Indianapolis railroad; thence east with said ground to the first alley; thence west to a point directly east of the starting point; thence west to the place of beginning;" that the word "west" was written in the description instead

of "north" by mistake, and that the southwest corner of the Jackson lot is 208 feet south of lot number seven (7), in Williams's second addition to said city; that on the 4th day of November, 1875, said James M. Dickson endorsed said note to the Madison County Bank, and said bank assigned the same to the Indianapolis National Bank; that on the 23d day of March, 1876, the last named bank recovered a judgment upon such note, in the circuit court of the United States for the District of Indiana, for $1,518, and on the 27th day of April, 1876, the plaintiff became replevin bail upon said judgment; that afterwards he was compelled to and did pay $1,860.34, in full of said judgment, which sum, with the interest thereon, is due him and remains unpaid; that Alfred Walker, on the 26th day of February, 1875, conveyed said real estate to Elijah J. Walden, who still owns the same, and that Samuel Pence, James Van Winkle, and the other persons named, each claim some lien upon or title to said land, but that the lien or title of each is subject to said mortgage; that each of said persons had full and actual knowledge of said mortgage, and that the same was unpaid at the time such liens or titles were acquired. Wherefore he asks to be subrogated to the rights of the mortgagee and his assignees under said mortgage, and that the same be reformed and foreclosed.

Separate demurrers were filed to the complaint by Samuel Pence, James Van Winkle and Elijah J. Walden, on the ground that it did not state facts, etc. These demurrers were overruled. Separate answers were filed. The answer of Van-Winkle contained four, and the answer of Pence contained five paragraphs. They also filed a joint answer of seven paragraphs. A demurrer was sustained to the fifth and sixth paragraphs of the joint answer, and a reply in several paragraphs was filed to each answer. A separate demurrer by Pence to the second and fifth paragraphs of the reply, and a joint demurrer by Pence and Van Winkle to the seventh and tenth paragraphs of the reply were overruled.

The issues were tried by the court, a finding was made for

the plaintiff, and, over a motion for a new trial, judgment was rendered upon the finding.

Samuel Pence, James VanWinkle and Elijah J. Walden appeal, and assign as error the various rulings made by the court during the progress of the cause. These will be considered in the order in which they are presented.

The appellants insist that the complaint was insufficient, and that the several demurrers should have been sustained. The first objection made to the complaint is that the description is so indefinite that it can not be made certain by averment. We think otherwise. The only uncertainty we observe in the description is as to the location of the Jackson lot, and this is rendered certain by the averments in the complaint. That this may be done has been repeatedly decided by this court. *Torr* v. *Torr*, 20 Ind. 118; *White* v. *Hyatt*, 40 Ind. 385; *Halstead* v. *Board, etc.*, 56 Ind. 363, and authorities there cited.

A description may be so indefinite that it can not be rendered certain by averment, but this is not, in our opinion, such description.

It is further insisted that the description does not fix definitely the south line; that the west line is described as running south to the ground of the Cleveland, Columbus, Cincinnati and Indianapolis Railroad, and that the word " ground " renders the description uncertain. It is said that if the word " track " had been used instead of the word " ground " the description would have been definite, but as the company may have owned ground other than its right of way the use of such word renders the description indefinite. We do not think the use of this word renders the description void. The phrase, the ground of the railroad, evidently means its right of way, and the south line of the parcel described is upon the north line of the right of way of said railroad company. This was sufficient. *Harrison, etc., Turnpike Co.* v. *Roberts*, 33 Ind. 246. The complaint was not, for such reason, insufficient.

It is next insisted that the complaint was bad, because a

person who becomes replevin bail upon a judgment rendered upon a note secured by a mortgage, and who is compelled to pay the same, is not entitled to be subrogated to the rights of the mortgagee or any holder of the mortgage.

This position is unsupported by authority. On the contrary, it is well settled that such persons are sureties, and as such are entitled to be subrogated to the rights of the creditor in all securities held by him. *Vert* v. *Voss*, 74 Ind. 565; *Kane* v. *State, ex rel.*, 78 Ind. 103; *Downey* v. *Washburn*, 79 Ind. 242; *Gerber* v. *Sharp*, 72 Ind. 553.

The next objection made to the complaint is, that there is no averment that Alfred Walker, the judgment debtor, is insolvent; and in support of this objection it is insisted that since the judgment, paid by the appellee Armstrong as replevin bail, is continued in force for his benefit, he can not foreclose the mortgage until he has exhausted the property of Walker by execution upon such judgment.

No authority is cited in support of this proposition, and we know of none. The appellee, as we have shown, is entitled to be subrogated to all the rights of the mortgagee, or any holder of such mortgage, and if such person could have foreclosed the mortgage after he had recovered a judgment upon the note, without first exhausting the property of the judgment debtor by execution, the appellee can do the same thing. That such person could have done so admits of no doubt. These remedies are cumulative, and might, at the common law, have been pursued concurrently. Under our statute, however, a party can not foreclose his mortgage while he is prosecuting any other action for the same debt, or while he is seeking to obtain execution of any judgment in such other action; but this court has several times held that this statute does not preclude a plaintiff from foreclosing his mortgage after he has recovered a judgment for the debt; and in *Hensicker* v. *Lamborn*, 13 Ind. 468, it was held that there is nothing in the statute, or the principles of the common law, that would require a mortgagee, who has recovered a judgment

for the debt, to have an execution issued and returned unsatisfied before he can foreclose his mortgage. If such person is not seeking to obtain an execution upon his judgment, he has an undoubted right to foreclose his mortgage, and if it be conceded• that equities may exist which will authorize the court to control him in the enforcement of his remedies, these need not be negatived in the complaint. This objection was not well taken.

The next objection to the complaint is urged by Elijah J. Walden. He insists that as he is presumptively a purchaser for value, the mortgage can not be reformed and foreclosed against him without an averment that he had notice of such mistake when he purchased the land, and that the averment that he had "full and actual knowledge of said mortgage," is not sufficient.

It is well settled that a mortgage which does not describe the land intended to be mortgaged can not be reformed and foreclosed against a subsequent *bona fide* purchaser of said land. It is also equally well settled that such mortgage may be reformed and foreclosed against a subsequent purchaser with notice of the mistake. This mortgage did not fail to describe the land, but the description was defective and uncertain without the aid of averments. Such descriptions, however, are not void, as they may be made certain by averment. This description was thus made certain. The southwest corner of the Jackson lot, the starting point, was alleged to be 208 feet south of lot seven (7), in Williams' second addition to the city of Anderson. This averment fixed the starting point. The starting point being fixed, the boundary line is given. It is true that the third line is described as running west from the alley, but as it is impossible to reach a point east of the starting point by running in such direction, this word must be disregarded as a false description. Dropping this word from the description, the third line runs from the alley to a point east of the starting point. This point is not fixed by the description, and hence the appellee desires

the mortgage reformed by substituting the word "north" for "west," so as to fix this point directly north of the southeast corner of said premises. Without the reformation sought, however, it is manifest that the description, as written, embraces all, or the greater portion of, the land purchased by Walden, and he is, therefore, bound by either actual or constructive notice of this mortgage, both of which are averred. The mere fact that it is necessary to reform this mortgage so as to fix definitely the northeast corner of these premises in no manner exonerates him from such consequences as notice of the mortgage imposes. If this mortgage contained no description of these premises, it could not be reformed and foreclosed against an innocent purchaser, but it does contain a description, and this description, though defective, was sufficient to put Walden upon inquiry, and thus to charge him with notice of the extent of the premises intended to be embraced in the mortgage. *McAteer* v. *McMullen*, 2 Pa. St. 32; Wade Notice, p. 138, section 319; *Parker* v. *Teas*, 79 Ind. 235. This objection, therefore, can not be sustained.

The next position taken is that the court erred in sustaining the demurrer to the 5th paragraph of the joint answer. The substance of this paragraph is that Alfred Walker, the judgment debtor, at the time the appellee became replevin bail, owned $18,000 worth of real estate in Madison county, Indiana, upon which said judgment was a lien, and that said Walker thereafter sold a large portion of said real estate to one Charles L. Henry, who agreed to pay said judgment, "and that it was then and there agreed, by and between the said Walker and Henry and this plaintiff, that said Henry should pay said judgment as a part of the purchase-money for said land."

The facts averred do not constitute a novation, as it is not shown that the appellee's claim was extinguished by the agreement. *Clark* v. *Billings*, 59 Ind. 508; *Bristol, etc., Co.* v. *Probasco*, 64 Ind. 406. The appellee, however, by the alleged agreement, obtained a promise for the payment of his claim, which

he could have enforced as a promise made to a third party for his benefit. *Fisher* v. *Wilmoth,* 68 Ind. 449; *Clodfelter* v. *Hulett,* 72 Ind. 137.

The facts stated show that the appellee has several remedies for the enforcement of his claim—one to foreclose the mortgage, another to collect by execution the judgment recovered against Walker, and the third to enforce the promise made by Henry to Walker for his benefit. These are cumulative, and either may be adopted. The existence of one does not deprive the appellee of the right to enforce either of the others. The mere fact that he could either cause an execution to issue upon the judgment, or could enforce the promise of Henry, did not deprive him of his remedy upon the mortgage. The acceptance of the promise without a relinquishment of the mortgage did not extinguish it, and so long as he retained it the mere acceptance of additional security would not preclude him from foreclosing it. It may be inequitable to foreclose the mortgage and sell the property without first exhausting the other securities. If inequitable, the most that appellants can claim is an order directing the appellee to first exhaust the other securities. This they did not ask, but pleaded the facts in bar of the action. The facts do not constitute a bar. The appellee may never be able to realize anything by an execution upon the judgment, or by a suit upon the promise of Henry, and whatever equities may exist, requiring him to first exhaust these remedies, they can not deprive him of his right to foreclose the mortgage. There was, therefore, no error in sustaining the demurrer to this paragraph of the answer..

It is next insisted that the court erred in overruling the demurrer of Samuel Pence to the second and fifth paragraphs of the reply. These were directed to the second paragraph of the answer. This paragraph alleged, in substance, that said James M. Dickson owned the land in dispute, and while he owned it, in 1872, he executed a mortgage upon it to James Van Winkle, for $3,500; that Van Winkle trans-

ferred the mortgage to James A. J. Brunt, who foreclosed the same in 1873; that upon an order of sale issued upon said decree, said land was duly sold to said Brunt, on the 2d day of October, 1875; that a certificate of purchase was duly issued to him; that he assigned said certificate to the Madison County Bank, and said bank assigned said certificate to said Pence, to whom the sheriff afterwards duly conveyed said land, and by virtue thereof he is owner of the same divested of the lien of the appellee's mortgage.

The second and fifth paragraphs of the reply allege, in substance, that within the year of redemption, and while the Madison County Bank owned the certificate of purchase, James M. Dickson transferred to said bank certain notes he then held against Alfred Walker in redemption of said property, which notes said bank accepted in full satisfaction of said certificate and in full redemption of said property.

The first objection made to these paragraphs is, that it is not averred that Dickson was owner or encumbrancer, and it is insisted that unless he was one or the other, he had no right to redeem the property. There would be much force in this objection, if it were only alleged that he had made payment to the clerk or tender of payment to the holder of the certificate, and it was insisted that such facts constituted a redemption of the property; but as it is averred that the redemption was in fact made, it is wholly immaterial by whom made. The holder had the right to accept the redemption money, and having done so the redemption is complete, whether the person by whom the payment was made was legally entitled to make it or not.

The next objection is that it is not averred that the appellant Pence had notice of the redemption at the time he purchased the certificate. This was unnecessary. He took by the assignment no greater rights than his assignor possessed. If the property had been redeemed, as alleged, the certificate was annulled, and its assignment to the appellant did not entitle him to a deed. There was no error in overruling the

demurrer to these paragraphs; nor was there any error in overruling the demurrer to the seventh and tenth paragraphs of the reply which present precisely the same question.

The motion for a new trial embraced various reasons. Among others it is insisted that the court erred in admitting in evidence the record of a deed made on the 25th day of March, 1865, to Benjamin F. Jackson, for a lot on the east side of Main street, in the city of Anderson. This deed was read for the purpose of fixing the starting point of the premises embraced in the mortgage. The objection to its introduction was that no proof had been offered to show that this was the lot mentioned in the mortgage. There was nothing in this objection. The fact that the deed purported, at a former period, to convey a lot to Benjamin F. Jackson, on the east side of Main street, in the locality in question, was enough to authorize its introduction in evidence. Nor is there anything in the suggestion that, as the appellee did not show that Jackson did not own this lot at the time the mortgage was made, he did not prove that Jackson formerly owned said lot, and hence there was a failure of proof.

It is also urged that the finding was contrary to the evidence. This position is based upon the following facts: The Indianapolis National Bank recovered judgment against Walker on the 23d day of March, 1876; on the 29th day of the same month said bank assigned said judgment to the Madison County Bank, and the appellee, on the 26th day of April thereafter became replevin bail. The appellants maintain that the assignment of the judgment did not transfer the mortgage to the Madison County Bank, and hence its payment by the appellee did not entitle him to be subrogated to the rights of any one under said mortgage. The cases of *Ward* v. *Haggard,* 75 Ind. 381, and *Kelsey* v. *McLaughlin,* 76 Ind. 379, are relied upon to support this proposition. These cases merely hold that the assignee of a judgment rendered upon a note can not, by virtue of such assignment, maintain an action against an endorser of the note. This

doctrine does not prevent such assignee from foreclosing a mortgage executed to secure such note. This was expressly decided in the case of *Holmes* v. *Hinkle*, 63 Ind. 518, and is in entire harmony with the doctrine that the recovery of a personal judgment upon a note secured by a mortgage is no bar to a subsequent suit to foreclose the mortgage.

It is also insisted that the court erred in refusing to allow Samuel Pence to testify that he had no notice at the time he purchased the certificate of sale, that James M. Dickson had transferred notes to the Madison County Bank in redemption of the property. The appellants claim that the evidence shows that Brunt owned the certificate at the time of such transfer, and that the subsequent purchase of said certificate by the bank and its transfer to him without notice entitled him to a deed, notwithstanding such attempted redemption. We think otherwise. If the means were put in the hands of the bank with which to redeem said property from the sale, and the bank then purchased the certificate, such purchase operated as a redemption of the property. *Shanklin* v. *Franklin L. Ins. Co.*, 77 Ind. 268. Under these circumstances, the bank could not claim title through such certificate, and the appellants who take the certificate subject to all equities can claim no greater rights. There was, therefore, no error in this ruling.

The remaining question arises upon the following facts: The judgment was recovered against Walker on the 23d day of March, 1876, and on the 29th of said month the Indianapolis National Bank assigned said judgment to the Madison County Bank. The appellee, on the 29th of April thereafter, and while the Madison County Bank owned said judgment, became replevin bail. After the execution of the above mortgage, Walker sold the land to Walden, who executed a mortgage upon it to secure the purchase-money. This mortgage was transferred to and held by the Indianapolis National Bank during the time it held the Walker mortgage. After the assignment of the judgment against Walker, the Indiana-

polis National Bank foreclosed the Walden mortgage, and at a sale upon such decree the appellants Pence and VanWinkle became the owners of the property.

They insist that a replevin bail upon a judgment rendered upon a note secured by a mortgage can not be subrogated to said mortgage as against any person holding a lien upon the premises at the time such person became replevin bail, though such lien is junior to the lien of the mortgage, and, therefore, the appellee is not entitled to be subrogated against them. This proposition can not be maintained. The recovery of the judgment against Walker merged the note in the judgment, but the debt was not extinguished; it remained, and the mortgage secured it in its new form, and might thereafter be foreclosed for the debt evidenced by the judgment. *Rooker* v. *Benson*, 83 Ind. 250.

As the mortgage remained as a subsisting security for and as incident to the debt evidenced by the judgment, the assignment of the judgment operated as a transfer of the mortgage to the Madison County Bank, and when the appellee paid the judgment he became entitled to be subrogated to the rights of said bank under the mortgage, and can enforce it against all persons against whom said bank could have enforced it. There can be no doubt about the right of the Madison County Bank to foreclose this mortgage against the Indianapolis National Bank, which held a junior lien, notwithstanding the fact that the latter bank held both mortgages at one and the same time; and if the Madison County Bank could do this, the appellee can do the same thing, not only as against the Indianapolis National Bank, but as against all persons who claim through such bank by virtue of such lien. The Walker mortgage is the prior lien, and the appellee, when subrogated to it, is entitled to priority, notwithstanding the fact that he became replevin bail after the execution of the Walden mortgage. These liens are separate and distinct, and the accidental circumstance that both were held by the Indianapolis National Bank at the same time in no manner affects their

priority.    When the Indianapolis National Bank transferred this mortgage to the Madison County Bank, as stated, the lien retained by virtue of the Walden mortgage was junior to the Walker mortgage precisely as when executed, and we are at a loss to know upon what principle of equity the Indianapolis National Bank, or any person holding under it, can claim priority over any person entitled to subrogation under the Walker mortgage. . If both mortgages secured the same debt, or each secured a part of the same debt, the rule would be different, as the first in such case would not be entitled to be subrogated to the security as against the holder of the mortgage, until the entire debt should be paid.    This was decided in *Zook* v. *Clemmer*, 44 Ind. 15, *Vert* v. *Voss*, 74 Ind. 565, and *Rooker* v. *Benson, supra.*    This is not, however, the case. For these reasons we are of opinion that the appellee's claim is superior to the claim of appellants under the Walden mortgage.    The motion for a new trial was, therefore, properly overruled.

We have now examined all the questions discussed, and as no error appears in the record the judgment should be affirmed.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion that the judgment be and it hereby is in all things affirmed, at the costs of appellants.

Filed Jan. 11, 1883.

## ON PETITION FOR A REHEARING.

ELLIOTT, J.—It is contended in the argument on the petition for a rehearing, that the opinion heretofore pronounced does not correctly lay down the law upon the subject of subrogation.    Counsel affirm that a replevin bail upon a personal judgment rendered on a debt secured by mortgage can not be subrogated to the mortgage lien, in cases where the creditor acquires a junior mortgage upon the same property. This position is not tenable.

The general rule is that where a replevin bail pays a judg-

ment, he is entitled to the benefit of all securities held by the creditor. This general rule, like most general rules, is not without exceptions, and one of these exceptions is that the right to subrogation does not exist unless the surety pays the entire debt secured by one and the same lien. *Zook* v. *Clemmer*, 44 Ind. 15; *Vert* v. *Voss*, 74 Ind. 565; *Rice* v. *Morris*, 82 Ind. 204. But where the debts are entirely separate and distinct, and are secured by different and independent mortgages, the principle declared in the cases cited does not apply. These cases do not decide that a replevin bail must pay all debts, or all liens, but do decide that he must pay all of the particular debt secured by one mortgage.

Subrogation is allowed only in cases where it will work equity and do no injustice. The right to subrogation is not a fixed legal right, but is an equitable one framed by courts of equity for the purpose of promoting the just administration of equitable principles. It is everywhere conceded that it can not prevail in cases where its operation would violate "equity and good conscience."

There are cases holding that a replevin bail is not entitled to subrogation in cases where it will operate to the injury of those who had acquired rights prior to his undertaking, but we do not think those cases rule here, for the reason that the right of the bail was to the mortgage as it existed in the hands of the creditor at the time the undertaking was entered into, and this carried his rights back to the date of the mortgage. The lien of the mortgage was not broken by the personal judgment taken for the debt, nor was the time of the inception of its lien changed in any particular. It was a lien in the hands of the creditor, from the time of its execution, and, as against the creditor, continued to be such a lien, or else ceased to be a lien at all. There was no interim in which the lien of the mortgage was dead, nor was there, either in legal contemplation or in reality, a second mortgage. The lien to which the appellee was substituted was that of the mortgage, precisely as it originally accrued.

Our decisions firmly settle the law to be that, under our statute, the rights and liability of the replevin bail are those arising out of the undertaking and the original judgment. His liability is determined, not by the law in force when he undertakes as bail, but by the law in force when the judgment was rendered, that is, he became bound by the original judgment according to its force and effect under the law in force at the date of its rendition. *Hutchins* v. *Hanna*, 8 Ind. 533; *Doe* v. *Harter*, 2 Ind. 252; *Doe* v. *Dutton*, 2 Ind. 309. It is therefore but just that his rights should be coeval with his burdens. In *Colgrove* v. *Cox*, 22 Ind. 43, it was held that the replevin bail's right of subrogation was superior to that of general creditors and to that of junior encumbrancers, and this principle decides the present case. The reasoning of the court was this: " The senior judgment would be a superior lien upon the debtor's property—would have to be first satisfied. The fact that the day of such satisfaction, from such property, should be delayed by staying the execution, can not, in view of numerous decisions relative to the laws controlling the remedy, substantially affect the rights of any creditor. Then if the judgment is not paid the property is swept off from the junior creditors to satisfy the same; if the bail pays it, and the property goes for his benefit, it is at last but in discharge of that superior lien, to which, under this construction, such bail had a right to look when he became a party." This decision has stood for many years, rights have grown up under it, and we should sustain it unless the clearest convictions of duty require us to break it down. We are by no means satisfied that the decision is erroneous.

Our statute provides for the entry of replevin bail, and gives a general right of subrogation. All contracts made, and all acts done, are conclusively presumed to be made and done under this law. It enters as a silent but potent factor into all affairs involving the duty and liability of replevin bail. The appellants were, therefore, bound to know, when they took their judgment, that there was a right to enter bail, and were

bound, also, to know the legal effect of the undertaking of bail, and the character of the rights of the person becoming bail. If they, by their own act, imperiled a junior lien they can not complain because the surety avails himself of a right secured by law.

The undertaking of a replevin bail is, under the statute, a matter of record, and is in this respect different from an ordinary contract of suretyship, where no record gives notice of its existence or character. A record notice is effective, not only as to the existence of the thing recorded, but also of its legal force and character. If a record fixes the rights of parties under the statute, then all persons acquiring an interest in the property are bound to know the effect of the contract, or deed, found in due form of law upon the public records.

In still another particular the case differs from one of ordinary suretyship. The law provides that a mortgage lien is not discharged by a personal judgment for the debt secured by the mortgage. *Hensicker* v. *Lamborn,* 13 Ind. 468 ; *O'Leary* v. *Snediker,* 16 Ind. 404. Here, then, was a mortgage securing the debt for which the bail became responsible, and this lien was neither merged nor interrupted by the personal judgment. A judgment neither merges nor impairs the mortgage lien. *Manns* v. *Brookville National Bank,* 73 Ind. 243 ; *Evansville, etc., Co.* v. *State, ex rel.,* 73 Ind. 219 (38 Am. R. 129) ; *Teal* v. *Hinchman,* 69 Ind. 379 ; *Lapping* v. *Duffy,* 47 Ind. 51 ; *Helmbold* v. *Man,* 4 Whart. (Pa.) 410 ; *Stahl* v. *Roost,* 34 Iowa, 475 ; *Riley* v. *McCord,* 21 Mo. 285 ; *Priest* v. *Wheelock,* 58 Ill. 114. The lien, therefore, enured to the benefit of the replevin bail, neither interrupted nor postponed by any act for which he was responsible. These considerations plainly distinguish the case from that of an ordinary surety.

The case of *Fishback* v. *Bodman,* 14 Bush, 117, decides that a judgment for purchase-money merges the equitable vendor's lien, and, therefore, the bail can not invoke the benefit of the lien. It is obvious that this principle can not rule here, for the plain reason that the judgment did not

merge the mortgage lien, but left it in undiminished vigor. In *Patterson* v. *Pope*, 5 Dana, 241, the person who asserted a right of subrogation was a surety on an injunction bond, and his position was not like that of a replevin bail under our statute, so that even conceding that the decision is sound, it does not apply to this case. But its soundness may well be doubted, for a carefully considered case asserts a doctrine directly opposite to that which it lays down. *Rodgers* v. *McCluer*, 4 Gratt. 81. The decision in *Armstrong's Appeal*, 5 W. & S. 252, is that a surety on a judgment, who hinders its enforcement by his undertaking, can not assert the judgment lien against subsequent judgment creditors, but this can not be good law where a statute, like ours, gives a right of subrogation and keeps the judgment alive for the benefit of the bail. The general doctrine of the case cited is opposed by *Watts* v. *Kinney*, 3 Leigh, 272, so that here, again, there is conflict. Strongly in point, in favor of our holding in the former opinion, is the case of *Drew* v. *Lockett*, 32 Beavan, 499, where it was said : " I am of opinion that a surety who pays off the debt for which he became surety must be entitled to all the equities which the creditor, whose debts he paid off, could have enforced, not merely against the principal debtor, but as against all persons claiming under him." In *Nunemacher* v. *Ingle*, 20 Ind. 135, it was held that a replevin bail for a debt secured by mortgage was not released by an order directing a return of execution, and the decision was placed upon the ground that the bail was secured by the mortgage lien, of which the court said : " The mortgage was a lien having its due priority." If it be true that the postponement did not release the bail because of the existence of the mortgage lien, then it must also be true that he succeeds to the lien in all its force and vigor. This well comports with the well known rule that a creditor who destroys or impairs a lien securing a debt, releases the surety to the extent of the value of such lien. The doctrine of some of the cases cited can not possibly be reconciled with this gen-

eral rule. In holding as we do, that the replevin bail was subrogated as against the junior mortgage acquired by the creditor, we are sustained by our own cases and by the general rule recognized by the courts and text-writers. *Gerber* v. *Sharp*, 72 Ind. 553, and authorities cited. *Kane* v. *State, ex rel.*, 78 Ind. 103.

The record gave notice of the character of the undertaking of the replevin bail and of the mortgage which secured the debt evidenced by the judgment, and the purchaser at the sale on the junior mortgage was bound to take notice of the facts disclosed by the record. Having this notice he can not be permitted to assert, to the injury of the bail, that his purchase gave him a paramount title. He bought with the notice imparted by the record, and can not displace prior rights.

The mortgaged property could not have been sold on execution. Although a mortgagee may obtain a personal judgment without foreclosing his mortgage, he can not sell the mortgagor's equity of redemption. R. S. 1881, section 1105. The bail could not, therefore, have compelled resort to the mortgaged property ; he was bound to pay the judgment, and when he did this he acquired a right to the lien as it existed when he became replevin bail.

In *Jones* v. *Tincher*, 15 Ind. 308, it was held that a surety could not compel a creditor to resort to mortgaged property, but that the surety's course was to pay the debt, and that he would, thereupon, as the court said, "be subrogated to the plaintiff's rights under the mortgage." The appellants having, by their own conduct, made it legally impossible to seize the mortgaged property on the judgment, are not in a situation to insist that the replevin bail is confined solely to the judgment lien.

The right of a surety to subrogation is not dependent upon the question of the solvency or insolvency of the debtor. When he pays all of a debt secured by a lien, he is entitled to be subrogated to the rights of the creditor, irrespective of

the financial condition of the debtor. Sureties are favored in law and in equity, and they are not bound to forego the benefit of a specific lien on real property and assume the hazard of collecting the money they have been compelled to pay by ordinary legal process. No such risk is put upon them.

The contention of counsel that the surety must show the insolvency of the principal debtor is proved to be without merit when it is brought to mind that the law requires the creditor to first exhaust the property of the principal debtor before forcing payment from the surety. *Edwards* v. *Haverstick*, 53 Ind. 348; *Elson* v. *O'Dowd*, 40 Ind. 300. If the appellants desired to prevent the lien from fastening on the mortgaged property, they should have levied their judgment upon other property of the principal debtor, instead of forcing the replevin bail to pay the judgment. It was for them, if there was other property of the principal debtor, to seize it in satisfaction of their debt, before falling on the surety, and there is, therefore, no equity in their claim that the surety, who has paid the debt, should cast about for property. They are in the position of demanding that another should do that which they themselves should have done. Petition overruled.

